United States District Court
Southern District of Texas
**ENTERED**
June 03, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| RANDALL WAYNE ODEN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 2:20-CV-00034 |
| | § | |
| WELLFIRST TECHNOLOGIES, INC., | § | |
| | § | |
| Defendant. | § | |

## ORDER ON POST-JUDGMENT MOTIONS

Plaintiff Randall Wayne Oden filed this employment discrimination lawsuit against

Defendant WellFirst Technologies, Inc. ("WellFirst") under the Americans With

Disabilities Act ("ADA") and the Texas Commission on Human Rights Act ("TCHRA").

On March 2, 2022, this matter was called for trial in the Corpus Christi Division of the

Southern District of Texas by agreement of the parties.  After a jury of eight was selected,

the case proceeded to trial.  The jury heard the evidence, and the parties closed.  The parties

delivered closing arguments.  The Court submitted the case to the jury on March 3, 2022.

The jury returned a verdict for Oden and against WellFirst on March 4, 2022.  With regard

to damages, the jury awarded Oden: (1) $100,000 for past pain and suffering,

inconvenience, mental anguish, and loss of enjoyment of life; (2) $100,000 for future pain

and suffering, inconvenience, mental anguish, and loss of enjoyment of life; (3) $100,000

for wages and benefits from May 13, 2019, to March 3, 2022; and (4) $450,000 in punitive

damages.  On March 22, 2022, the Court entered a final judgment awarding Oden, in

accordance with the statutory damage caps in 42 U.S.C. § 1981a(b)(3), with: (1) $100,000 for wages and benefits from May 13, 2019, to March 3, 2022; and (2) $50,000 for past and future pain and suffering, inconvenience, mental anguish, and loss of enjoyment of life and punitive damages.  (D.E. 93).

Currently pending are several post-judgment motions.  WellFirst has filed a Renewed Motion for Judgment as a Matter of Law (D.E. 104) and, alternatively, a Motion for New Trial (D.E. 103).  Oden has filed a Motion for Reconsideration (D.E. 94) regarding the final judgment and a Motion for Award of Attorney's Fees and Costs (D.E. 96).  The Court will first address WellFirst's motions.

## WellFirst's Motions

*a)  Renewed Motion for Judgment as a Matter of Law (D.E. 104)*

In its renewed motion for judgment as a matter of law, WellFirst contends that the trial evidence failed to establish that Oden had a disability or was regarded as having a disability under the ADA and TCHRA.  (D.E. 104 at 3-6).  As to an actual disability, WellFirst argues that the evidence showed that Oden only developed a disability after he was terminated, which is insufficient to show that he had a disability at the time of the termination.  (*Id.* at 3-4).  As to being regarded as having a disability, WellFirst contends that no evidence supported this claim and that, regardless, Oden's recovery from surgery represented a transitory or minor impairment that lasted less than six months and cannot support a "regarded as" claim.  (*Id.* at 4-6).

Oden responds that, as to an actual disability, the evidence showed that he could not perform his job at WellFirst and that his limitations are permanent.  (D.E. 109 at 2).  As to

2

being regarded as disabled, Oden argues that the evidence showed that his supervisors and WellFirst's human resources representative were aware of his impairment at the time of his termination and created an expectation that Oden return to work anyway. (*Id.* at 2-3).

WellFirst replies that Oden's disability arose only after his termination, which is insufficient to state an ADA claim. (D.E. 118 at 2). WellFirst argues that the trial evidence showed that Oden's existing knee injury did not interfere with his ability to do his job prior to the knee surgery. (*Id.* at 2-3). Further, WellFirst contends that Oden's application for short-term disability does not establish a disability under the ADA. (*Id.* at 3). As to being regarded as disabled, WellFirst argues that the evidence showed only that various WellFirst employees were aware that Oden had a knee problem, but that awareness alone does not support an inference the WellFirst regarded him as disabled. (*Id.* at 3-4).

"If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may: (A) resolves the issue against the party; and (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue." Fed. R. Civ. P. 50(a)(1). Such a motion may be made at any time before the case is submitted to the jury. Fed. R. Civ. P. 50(a)(2). Within 28 days of the entry of judgment, "the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial." Fed. R. Civ. P. 50(b). "In ruling on the renewed motion, the court may: (1) allow judgment on the verdict, if the jury returned a verdict; (2) order a new trial; or (3) direct the entry of judgment as a matter of law." *Id.*

There is no legally sufficient basis if the facts and inferences so strongly favor one party that reasonable people could not arrive at a contrary verdict. *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 218-19 (5th Cir. 2001).  In considering the motion, the Court must draw all reasonable inferences in favor of the nonmoving party and cannot make credibility determinations or weigh the evidence.  *Id.* at 219.  However, these inferences cannot be based solely on speculation and conjecture.  *Allstate Ins. Co. v. Receivable Fin. Co.*, 501 F.3d 398, 405 (5th Cir. 2007).  "[T]here must be more than a mere scintilla of evidence in the record to render the grant of JMOL inappropriate."  *Id.*  Thus, a "court should grant a Rule 50(a) motion not only when the non-movant presents no evidence, but also when there is not a sufficient conflict in substantial evidence to create a jury question." *Travis v. Bd. of Regents of the Univ. of Texas Sys.*, 122 F.3d 259, 263 (5th Cir. 1997) (internal quotation marks omitted).

If the Court grants a renewed motion for judgment as a matter of law, it must also conditionally rule on the motion for new trial and determine "whether a new trial should be granted if the judgment is later vacated or reversed."  Fed. R. Civ. P. 50(c).

Under the ADA and TCHRA and as relevant in this case, a disability means: (1) a physical or mental impairment that substantially limits one or more major life activities; or (2) being regarded as having such an impairment.  42 U.S.C. § 12012(1); Tex. Lab. Code § 21.002(6).  In order to establish a prima facie discrimination claim, the plaintiff must prove that: (1) he has a disability; (2) he was qualified for the job; and (3) he was subject to an adverse employment decision on account of his disability.  *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 697 (5th Cir. 2014).  The relevant time for determining whether the

4

plaintiff had a disability is the time of the adverse employment action.  *E.E.O.C. v. Chevron Phillips Chem. Co., LP*, 570 F.3d 606, 618 (5th Cir. 2009).

"The term 'substantially limits' shall be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA.  'Substantially limits' is not meant to be a demanding standard."  29 C.F.R. § 1630.2(j)(1)(i).  "An impairment is a disability within the meaning of this section if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population. An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting. Nonetheless, not every impairment will constitute a disability within the meaning of this section."  *Id.* § 1630.2(j)(1)(ii).

Here, the evidence at trial was legally sufficient to support the jury's finding that Oden was actually disabled at the time he was terminated because he was substantially limited in the major life activity of walking.  The relevant time for determining whether the plaintiff had a disability is the time of the adverse employment action.  *Chevron*, 570 F.3d at 618.  At trial, evidence was given both of Oden's long-standing knee issues that existed at the time he went on leave and also his condition post-surgery, which was ultimately his condition when he was terminated.  Considering this evidence individually and in combination, it is legally sufficient to support the jury's finding of actual disability.

Drawing all reasonable inferences in favor of Oden, the trial evidence showed that he suffered a knee injury in high school that caused him pain throughout his life.  (D.E. 114 at 84-85).  He walked with a limp for some time, including when he was interviewed

5

for the job at WellFirst.  (*Id.* at 131).  He was hired to be a salesman, but also was expected to "catch[] extra jobs" in the field when no one else was available.  (*Id.* at 132-33).

Until January 2019, Oden's knee injury caused pain and he received injections in the knee to manage the pain, but it did not interfere with his ability to work.  (*Id.* at 106).  While at work in January 2019, Oden's knee buckled.  (*Id.* at 107).  This was a common occurrence that happened "day to day walking up a set of stairs or anything else."  (*Id.* at 135).  However, Oden's pain management doctor informed him that his knee needed to be replaced.  (*Id.* at 107).  Oden had knee replacement surgery on March 18, 2022, and took time off work for the surgery and recovery period, which was estimated to take 6-8 weeks.  (*Id.* at 108; Trial Ex. 5 at 5).  While he was still recovering from surgery, WellFirst terminated his employment on May 9, 2019.  (D.E. 114 at 116-17).  His knee never fully recovered following surgery and he would not be able to go out to do fieldwork like he could before, but he could still be a salesman.  (*Id.* at 122, 129).

Oden believed that his disability when he was terminated on May 9, 2019, was that he could not walk due to his knee replacement surgery.  (*Id.* at 138-39).  Oden did not think he was disabled prior to the surgery, although he also explained that before the surgery he "was injured and [he] just made do.  And it got to the point where [he] couldn't make do and [he went] out to try to get [it] fixed and that's when [he was] terminated."  (*Id.* at 139).  His termination made him lose his health insurance, which prevented him from completing physical therapy following surgery, which caused his disability.  (*Id.* at 140).

First, the evidence was legally sufficient to support the jury's conclusion that Oden's knee impairment prior to surgery substantially limited the major life activity of walking.

6

"Substantially limits" is not meant to be a demanding standard, should not demand an extensive analysis, and does not usually require scientific, medical, or statistical analysis. 29 C.F.R. § 1630.2(j)(1)(i), (iii), (v).  Oden's knee impairment caused him to limp, need pain injections,[1] and have a knee that buckled "day to day walking up a set of stairs or anything else."  (D.E. 114 at 106-07, 131, 135).  This impairment could reasonably be found to be substantially limiting in comparison to most people in the general population, who do not limp or have their knee buckle doing day-to-day activities like using stairs, and Oden was not required to show that his impairment completely prevented him from walking, or even that he was significantly or severely restricted from walking.  29 C.F.R. § 1630.2(j)(1)(ii).  Similarly, the fact that Oden could still do his job prior to surgery is not determinative because the major life activity at issue is walking, not working, and Oden need only show that he had an impairment that substantially limited a single major life activity.  29 C.F.R. § 1630.2(j)(1)(viii).

Second, the evidence was legally sufficient to support the jury's conclusion that Oden's knee impairment after surgery substantially limited the major life activity of walking.  At trial, it was undisputed that Oden could not walk after surgery.  (D.E. 114 at 138-39).  The issue is instead whether knee surgery can qualify as a disability under the ADA due to the expected limited duration of the impairment.  Indeed, the previous version of the regulations implementing the ADA specifically provided that the "duration or

---

[1] Notably, that these pain injections may have improved the effects of Oden's knee impairments is irrelevant to the analysis.  "The determination of whether an impairment substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures."  29 C.F.R. § 1630.2(j)(1)(vi).

7

expected duration of the impairment" was a factor to consider in determining whether it was substantially limiting. *See, e.g., Chevron*, 570 F.3d at 614-15 (citing the applying the previous regulation). However, the text of the regulations implementing the ADA in effect now and at the time of Oden's termination no longer include this consideration.[2] Instead, the regulations state that "[a]n impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active," and that the "effects of an impairment lasting or expected to last fewer than six months can be substantially limiting" when evaluating whether a plaintiff had an actual disability under the ADA. 29 C.F.R. § 1630.2(j)(1)(viii). Applying the current regulations, the Ninth Circuit recently concluded that impairments stemming from surgery can be substantially limiting where the plaintiff was unable to perform certain major life activities for more than two months. *Shields v. Credit One Bank, N.A.*, 32 F.4th 1218 (9th Cir. 2022). Oden's surgery occurred on March 19, 2019, and he was terminated while still recovering on May 9, 2019, a period of almost two months. (D.E. 114 at 116-17, 138-39). Moreover, Oden's knee impairments that existed at the time of his termination have continued to this day and were not limited to a period of time shorter than several months. (*Id.* at 122, 129). Accordingly, under the current regulations, the evidence was legally sufficient to support the jury's conclusion that

---

[2] While the text of the regulations no longer includes this as a consideration, the formal guidance accompanying the regulations does indicate that the duration of an impairment is still relevant to determining whether the impairment is substantially limiting. 29 C.F.R. § Pt. 1630, App. (portion addressing Section 1630.2(j)(1)(ix)). However, the formal guidance also states that impairments that last only for a short period of time may still be covered if sufficiently severe, and notes that, for example, "if an individual has a back impairment that results in a 20-pound lifting restriction that lasts for several months, he is substantially limited in the major life activity of lifting." *See id.*

Oden's knee impairment after surgery substantially limited the major life activity of walking.

In its briefing, WellFirst does not engage with the legal standards defining what qualifies as a "substantially limiting" impairment. Instead, WellFirst relies entirely on Oden's testimony that he did not consider himself disabled until after his surgery. (D.E. 114 at 138-40). First, whether Oden, as a lay-person, considered himself disabled does not resolve the issue of whether he was actually disabled under ADA's legal definition of the term. During this same portion of testimony, Oden explained that he also had long-standing knee issues that he "made do" with prior to the surgery. (*Id.*). In other portions of his testimony, Oden testified regarding further details of this knee injury, and the jury was entitled to use this testimony to conclude that Oden was substantially limited for the reasons discussed above. (*Id.* at 84-85, 106-07, 131, 135). Second, also as discussed above, Oden's impairment prior to surgery is only one relevant consideration. His condition post-surgery and at the time of his termination is also relevant, so even if Oden's testimony conclusively established that he was not disabled prior to surgery, that alone would not entitle WellFirst to judgment as a matter of law.

Here, while the trial evidence of an actual disability was certainly not overwhelming, given the entirety of the evidence regarding Oden's longstanding knee injury, his surgery recovery, and his continuing knee issues that began at the time of surgery, WellFirst has not shown that no reasonable person could conclude that Oden had a disability under the ADA at the time he was terminated. Because the evidence was legally

sufficient to support a finding of actual disability, it is unnecessary to address whether the jury also could have reasonably found that Oden was regarded as having a disability.

Accordingly, the renewed motion for judgment as a matter of law (D.E. 104) is **DENIED**.

   b) *Motion for New Trial (D.E. 103)*

In the alternative motion for a new trial, WellFirst reiterates its arguments that the evidence at trial was insufficient to show that Oden was disabled or that he was regarded as being disabled.  (D.E. 103 at 2-5).  WellFirst also contends that the evidence was insufficient to support an award of punitive damages and that the Court erred in allowing Brianna Dunahoe, WellFirst's human resources manager, to testify.  (*Id.* at 6-8).

Oden responds that the evidence established that Oden was disabled and/or that WellFirst regarded him as disabled.  (D.E. 108 at 2-3).  Further, Oden argues that the Court's admission of Dunahoe's testimony was not erroneous and contends that WellFirst deceived him by listing Dunahoe as a witness and then attempting to not make her available to testify.  (*Id.* at 3-4).

WellFirst replies by reiterating its arguments regarding the disability issues.  (D.E. 117 at 2-4).  WellFirst disputes Oden's claim that it was deceptive regarding whether Dunahoe would testify at trial.  (*Id.* at 4).

Following a jury trial, a court may grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court."  Fed. R. Civ. P. 59(a)(1)(A).  For example, courts have the discretion to grant a new trial when "when it is necessary to prevent an injustice, when the jury's verdict is against the manifest weight of

10

the evidence, when the trial was unfair, when prejudicial error occurred, or when the Court finds the damages imposed by the jury were excessive." *Rhines v. Salinas Const. Techs., Ltd.*, No. 2:11-CV-00262, 2013 WL 1455655, at *1 (S.D. Tex. Apr. 9, 2013), aff'd, 574 F. App'x 362 (5th Cir. 2014).

Here, the evidence was sufficient to support the jury's verdict regarding Oden's disability, as discussed above.  Similarly, the Court finds that the evidence was sufficient to support the award of punitive damages given Oden's testimony that he was told he would be fired if he did not return within four weeks of his knee surgery and Dunahoe's testimony that she told WellFirst's management that it would look bad to fire Oden while he was on short-term disability leave for knee surgery.  (D.E. 112 at 65-66, 76; D.E. 114 at 108). WellFirst is correct that Dunahoe's statement does not necessarily mean that WellFirst acted with knowledge that it could be violating the law when it terminated Oden.  *See Kolstad v. Am. Dental. Ass'n*, 527 U.S. 526, 535-36 (1999) (discussing the standard for punitive damages).  However, it was not unreasonable for the jury to draw the inference that WellFirst was aware of that risk when making the decision given Oden's and Dunahoe's testimony.  Charles Robertson and Derek Martin, Oden's supervisors, testified that they terminated Oden due to his job performance and did not believe he had a disability, but this testimony does not render the jury's award of punitive damages to be against the manifest weight of the evidence.

Finally, WellFirst has cited no authority in support of its claim that the Court's admittance of Dunahoe's testimony was erroneous, but rather cites only cases supporting the general proposition that a new trial can be warranted because of erroneous evidentiary

11

rulings. (*See* D.E. 103 at 7-8). Moreover, even if the Court's ruling was erroneous, WellFirst has not shown that Dunahoe's testimony had a "substantial and injurious effect or influence on the determination of a jury" or that the verdict was "inconsistent with substantial justice," which are required to show that a new trial is appropriate. *Cerabio LLC v. Wright Med. Tech., Inc.*, 410 F.3d 981, 994 (7th Cir. 2005).

Accordingly, the motion for a new trial (D.E. 103) is **DENIED**.

### Oden's Motions

*a) Motion for Reconsideration (D.E. 94)*

Oden seeks reconsideration of the Court's ruling on his Motion to Enter Judgment (D.E. 92) and the entry of Final Judgment (D.E. 93). Specifically, Oden contends that the Court should have included front pay and prejudgment interest in the final judgment. (*Id.* at 2). Oden seeks $139,620 for five years of front pay and $21,657.53 in prejudgment interest. (*Id.*; D.E. 88 at 2-6).

WellFirst responds that Oden is not entitled to front pay because, to receive such an award, he has to show that reinstatement is not feasible and has not done so. (D.E. 102 at 4-5). Alternatively, WellFirst contends that Oden should receive a smaller award of front pay than what he requests because he did not work at WellFirst long before his termination, there was evidence of other issues that likely would have cut his employment short beyond discrimination, his job was reassigned to an existing employee, and the entire office he worked at closed in April 2021. (*Id.* at 6-7). Finally, WellFirst argues that Oden may only receive prejudgment interest on lost wages because interest is not available on future emotional harms or punitive damage awards. (*Id.* at 7-8). WellFirst asserts that the Court's

12

judgment did not distinguish between past compensatory damages, future compensatory damages, and punitive damages, and Oden therefore cannot receive interest on this award. (*Id.* at 8-9).   WellFirst also contends that an award of prejudgment interest on the compensatory damages award would make it exceed the statutory cap.   (*Id.* at 9). Accordingly, WellFirst argues that Oden can receive a total prejudgment interest award of $14,439.80 on the $100,000 backpay award.   (*Id.*).

Oden replies that the evidence at trial showed that reinstatement was not feasible and that the requested award would not be excessive.  (D.E. 105 at 1-2).  As to prejudgment interest, Oden states that should the Court grant his motion for reconsideration, it would require a recalculation based on the past damages award.  (*Id.* at 2).

"Front pay is awarded to compensate the plaintiff for lost future wages and benefits." *Shirley v. Chrysler First, Inc.*, 970 F.2d 39, 44 (5th Cir. 1992).  "Reinstatement generally is preferable to an award of front pay, and [the Fifth Circuit] customarily require[s] the district court to articulate its reasons for finding reinstatement infeasible and awarding front pay in lieu of reinstatement." *Giles v. Gen. Elec. Co.*, 245 F.3d 474, 489 n.27 (5th Cir. 2001).

"Front pay is awarded to compensate the plaintiff for lost future wages and benefits." *Rutherford v. Harris County*, 197 F.3d 173, 188 (5th Cir. 1999).  "[A]lthough [the Fifth Circuit] will generally accord 'wide latitude' to the district courts in the determination of front pay, [the Circuit] ha[s] also emphasized that such awards must be carefully crafted to avoid a windfall to the plaintiff." *Palasota v. Haggar Clothing Co.*, 499 F.3d 474, 491 (5th Cir. 2007).

13

"In exercising its discretion to award front pay, the district court must consider whether an award of front pay is reasonable under the facts of the case." *Downey v. Strain*, 510 F.3d 534, 544 (5th Cir. 2007). "Front pay can only be calculated through intelligent guesswork, and we recognize its speculative character by according wide latitude in its determination to the district courts." *Sellers v. Delgado Coll.*, 781 F.2d 503, 505 (5th Cir. 1986). The Fifth Circuit has "identified several factors to be considered in determining the amount of a front pay award: (1) the length of prior employment, (2) the permanency of the position held, (3) the nature of the work, (4) the age and physical condition of the employee, (5) possible consolidation of jobs, and (6) the myriad other non-discriminatory factors which could validly affect the employer/employee relationship." *Downey*, 510 F.3d at 544.

Prejudgment interest applies "to all past injuries, including past emotional injuries. Courts should award prejudgment interest whenever a certain sum is involved." *Thomas v. Texas Dep't of Crim. Just.*, 297 F.3d 361, 372 (5th Cir. 2002). However, it does not apply to "harms which have yet to occur." *Id.* Similarly, it does not apply to punitive damages. *George v. Foster*, 129 F.3d 610 (5th Cir. 1997). "District courts generally should calculate interest on back pay and past damages based on the date of the adverse employment action." *Thomas*, 297 F.3d at 372.

Where there is no federal law setting the rate of prejudgment interest, courts look to state law. *See Perez v. Bruister*, 823 F.3d 250, 274 (5th Cir. 2016). Under Texas law, "[t]here are two legal sources for an award of prejudgment interest: (1) general principles of equity and (2) an enabling statute." *Johnson & Higgins of Texas, Inc. v. Kenneco*

14

*Energy, Inc.*, 962 S.W.2d 507, 528 (Tex. 1998).  The parties agree that this case is governed by common law rather than statute.  "[P]rejudgment interest accrues at the rate for postjudgment interest and it shall be computed as simple interest."  *Id.* at 532.  The appropriate interest rate is "the prime rate as published by the Board of Governors of the Federal Reserve System on the date of computation," or five percent per year if the published rate is below five percent.  Tex. Fin. Code § 304.003(c)(1), (2).  The current published prime rate is lower than five percent.[3]

Compensatory damages and prejudgment interest combined cannot exceed the statutory damage caps because prejudgment interest is not a separate damage award. *Johnson v. Sw. Rsch. Inst.*, 384 F. Supp. 3d 722, 727 (W.D. Tex. 2019).

Here, even if reinstatement is infeasible, an award of front pay is not appropriate under the facts of this case.  First, as to the specifically defined factors to consider when making a front pay determination, Oden was an at-will employee who worked at WellFirst for just over a year before his termination, and he was not replaced by someone else, but rather his job was consolidated and given to an existing employee.  (D.E. 112 at 40; D.E. 114 at 201).  Moreover, the evidence at trial showed that Oden and Derek Martin, the two salesmen that worked in WellFirst's Alice office, were not meeting sales expectations. (D.E. 114 at 105, 150-55, 204-05).  While Oden was terminated first and the jury concluded that this termination was discriminatory, WellFirst also subsequently terminated Martin and closed the entire office in April 2021.  (*Id.* at 199).  Finally, while Oden sought a

---

[3] The prime rate can be found at: https://www.federalreserve.gov/releases/h15/.

transfer to a different office prior to his termination, this transfer would have involved working as a fieldhand, which Oden testified he can no longer do anyway. (*Id.* at 193-94; D.E. 112 at 38). These non-discriminatory factors likely would have affected the employment relationship. Under these circumstances, any award of front pay, much less five years of front pay, would be inappropriate and would represent a windfall to Oden. *Palasota*, 499 F.3d at 491.

As to prejudgment interest, Oden is entitled to prejudgment interest on his past compensatory damages award and on his backpay award. As to past compensatory damages, the Court's original judgment did not separate past compensatory damages from future damages and punitive damages. However, Oden has already reached the $50,000 statutory damage cap for the combination of past and future pain and suffering, inconvenience, mental anguish, and loss of enjoyment of life and punitive damages. 42 U.S.C. § 1981a(b)(3). Compensatory damages and prejudgment interest combined cannot exceed the statutory damage caps because prejudgment interest is not a separate damage award. *Johnson*, 384 F. Supp. 3d at 727. Thus, even with prejudgment interest included on his past compensatory damages, Oden can still only receive $50,000 for this category of damages and this section of the judgment does not change.

Oden is entitled to prejudgment interest on the $100,000 backpay award, however, which does not have a statutory cap. The parties agree that the appropriate interest rate is five percent and that interest is to be calculated from May 13, 2019. Tex. Fin. Code § 304.003(c)(1), (2). Applying a 5% interest rate for the period between May 13, 2019,

and March 22, 2022, the date of entry of the original final judgment, the total prejudgment interest is $14,301.37. The final judgment will be amended to include this sum.

b) *Motion for Attorney's Fees (D.E. 96)*

In the motion for attorney's fees, Oden seeks a total fee award of $205,465.01 for the combined work of his two counsels. (D.E. 96 at 6). This total is based on an average rate of $625 per hour, consisting of $650 an hour for 221.29 hours worked for attorney William S. Hommel, Jr., and $600 an hour for 102.7 hours for attorney Clif Alexander. (*Id.* at 8; D.E. 96-1 at 7-8; D.E. 96-2 at 5-6). He also seeks court costs of $2,115.25. (D.E. 95 at 1; D.E. 96 at 11). Oden has submitted a table of attorney's fee rate data for employment discrimination cases in Texas and additional data from the Texas Employment Lawyers Association in support of the requested hourly rate. (*See* D.E. 26-1; D.E. 110).

WellFirst agrees that, as the prevailing party, Oden is entitled to recover reasonable attorney's fees. (D.E. 106 at 2). However, WellFirst asserts that the maximum rate the Court should consider using is $450 per hour because the $625 hourly rate exceeds the prevailing hourly rate in the Corpus Christi division and the case was a routine disability discrimination case. (*Id.* at 2-12).

The parties further filed a reply and sur-reply. (D.E. 107, 116).

To calculate reasonable attorney's fees, courts use a "lodestar" method where a "lodestar is calculated by multiplying the number of hours an attorney reasonably spent on the case by an appropriate hourly rate, which is the market rate in the community for this work. *Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013). The relevant market is the community in which the district court sits. *Tollett v. City of Kemah*, 285 F.3d 357, 368

17

(5th Cir. 2002).  Courts also consider an attorney's customary billing rate and experience to determine what qualifies as comparable work.  *Quantlab Techs. Ltd. (BVI) v. Godlevsky*, 317 F. Supp. 3d 943, 951-52 (S.D. Tex. 2018).

"There is a strong presumption of the reasonableness of the lodestar amount."  *Id.* However, after making the lodestar calculation, the court "the district court may decrease or enhance the lodestar based on the relative weights of the twelve factors set forth" by the Fifth Circuit.  *Heidtman v. Cnty. of El Paso*, 171 F.3d 1038, 1043 (5th Cir. 1999).  These factors include: "(1) the time and labor required; (2) the novelty and difficulty of the issues; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) the award in similar cases."  *Id.* at 1043 n.5.  "The lodestar may not be adjusted due to a … factor, however, if the creation of the lodestar award already took that factor into account."  *Id.* at 1043.

Here, WellFirst disputes only the hourly rate provided by Oden's attorneys.  In determining an appropriate hourly rate, the Court finds several factors particularly important in this case, including the novelty and difficulty of the issues, the amount involved and results obtained, the experience of the attorneys, and the award in similar cases.  First, as to Mr. Hommel, he is an experienced attorney with over 30 years practicing law.  The evidence before the Court indicates that attorneys with a similar level of

18

experience as Mr. Hommel have received attorney's fee rates of between $425 and $1,170 in employment cases in this district.  (D.E. 26-1 at 26-45; D.E. 110-1 at 61-62).  Further, Mr. Hommel obtained a result that exceeded the statutory damage limits in this case. However, the issues in this case were not particularly novel or difficult.  The case involved a relatively straightforward disability discrimination claim, did not have particularly extensive briefing or discovery compared to more complex employment cases, and resulted in a short trial with few witnesses and exhibits.  Considering all these factors, the Court concludes that a rate of $600 per hour is appropriate for Mr. Hommel in this case.  While he is experienced and obtained a strong result for his client, the case was not particularly complicated and a sum closer to the lower mid-range of other employment cases and similar attorneys is appropriate.

Second, as to Mr. Alexander, while he is experienced, he obtained his law degree in 2008 and therefore has been practicing less than half as long as Mr. Hommel.  The evidence before the Court indicates that attorneys with a similar level of experience as Mr. Alexander have received attorney's fee rates of between $250 and $1170 in employment cases in this district.  (D.E. 26-1 at 26-25; D.E. 110-1 at 61-62).  Mr. Alexander himself appears in the submitted documents with an approved hourly rate of $450 just over two years ago.  (D.E. 26-1 at 38; D.E. 110-1 at 61).  The other considerations analyzed for Mr. Hommel above apply equally to Mr. Alexander.  Considering, all these factors, the Court concludes that a rate of $500 per hour is appropriate for Mr. Alexander in this case.  While he is experienced and obtained a strong result for his client, the case was not particularly complicated and a

19

sum near the lower mid-range of other employment cases and similar attorneys is appropriate.

Finally, Oden has not shown that these lodestar amounts should be adjusted based on any of the other factors that were not already considered.  Accordingly, Oden's motion for attorney's fees is **GRANTED IN PART**.  The Court will approve attorney's fees totaling $184,124, consisting of $132,774 for Mr. Hommel's 221.29 hours worked and $51,350 for Mr. Alexander's 102.7 hours worked.  Further, WellFirst does not challenge the request for $2,115.25 in costs, which the Court finds reasonable and approves.

**Conclusion**

WellFirst's Renewed Motion for Judgment as a Matter of Law (D.E. 104) and Motion for New Trial (D.E. 103) are **DENIED**.  Oden's Motion for Reconsideration (D.E. 94) regarding the final judgment is **GRANTED IN PART** and **DENIED IN PART**, and his Motion for Award of Attorney's Fees and Costs (D.E. 96) is **GRANTED IN PART** with the requested fees modified as discussed above.  The Court will enter a separate amended judgment in accordance with this order.

ORDERED on June 3, 2022.

Julie K. Hampton
United States Magistrate Judge